THE HEIRS OF AUGUSTUS C. PARRY v. THE TOBACCO INSURANCE COMPANY ET AL.

A. leased lands to B. by deed, with covenants that B. should pay all taxes and assessments, and rent quarterly—lease to be forfeited by default in payment of rent—with privilege of purchasing the fee within the term. The lessee made default in paying rent and taxes; the lessor entered and sold the fee. Subsequently, before the expiration of the term, the heirs of B. tendered the contract price for the fee, which was refused. On their suit for specific performance:

*Held*, that the payment of the rent and taxes was a condition precedent on the lessee's part to the exercise of his option to purchase; that the non-payment of rent and taxes was such a default as barred him from asking specific performance.

RESERVED TO GENERAL TERM.—On April 4, 1856, Robert B. Bowler, now deceased, executed to Augustus C. Parry an agreement in writing, by which he leased to Parry a lot at the northeast corner of Front and Vine streets, in Cincinnati, twenty feet front, to be held by Parry and his assigns from the 27th of that month for a term of ten years, at an annual rent of $600, payable in quarterly installments, the lessee to erect a substantial building upon the premises before the expiration of the term, and to pay all

taxes and assessments that might be levied on the property, with the proviso if the quarterly installments of rent should not be paid within thirty days after the time they severally became due, the lease should be forfeited after demand for payment made by the lessor.

The same stipulation was made as to unpaid taxes and assessments. There was a privilege of purchase of the fee at any time within the ten years at $300 a front foot, and on such a contingency the lessor agreed to give a deed of general warranty, with release of dower. This agreement was executed in due form, acknowledged, and recorded.

Under this lease the lessee entered and kept possession of the premises till July, 1858, since which time neither he nor his heirs have been in possession, nor has any rent been paid by him or them.

On the 23d of April, 1866, before the expiration of the term of ten years, and after the decease of Bowler, the lessee, Parry, expressed to Bowler's heirs his intention to avail himself of the privilege of purchase, and tendered the $6,000, demanding a deed with the covenant named in the lease, which was refused.

Previous to this, from 1858, after Parry had vacated the premises and made no provision for the payment of rent or taxes down to 1863, the lessor was compelled to pay the taxes. On the 23d day of April of that year, the taxes the lessor had paid to prevent a forfeiture to the State amounted to $321.70, with interest. On the day last named he sold the property to one Schultz, and by conveyances through him to Glenn and Cooke it became vested in the Tobacco Insurance Company of Cincinnati. The premises had meanwhile greatly increased in value, being worth more than double the amount named in the lease as the purchase price.

Parry having died, this suit was brought by his heirs, asking a specific performance of the covenants of the

lease, and the heirs of Bowler, together with the subsequent proprietors, were made parties defendant.

STORER, J., in giving the opinion of the court, said:

This privilege of purchase secured the right to the lessee to compel a compliance by the lessor, leaving it optional entirely with the lessee, but it must be admitted that the privilege was dependent upon the performance of the covenants to pay the annual rent and taxes. A refusal to discharge the obligation in this respect, which would. defeat the right of the lessee to hold during the term stipulated for the possession of the premises, must necessarily put an end to the right of purchase.

Under these circumstances can we decree a specific performance against the defendants? We need not refer to the established doctrine that we are not bound to grant in any case such a decree as a matter of course. We are to exercise a sound judicial discretion, taking into consideration the conduct of the parties, as well as the condition of the property to be affected.

On this point there has been no uncertainty as to the law in this State from the earliest reported case in our courts until the present time. Thus, it was held in *Hutcheson* v. *McNutt*, 1 Ohio, 14, decided nearly fifty years ago, "that a party demanding specific performance must show that he is in no default, unless he can account for such default by special circumstances, and if it be unexplained, or if he can not perform the whole of the contract on his part, he can not compel the other side to perform what otherwise he might require him to do. And for the same reason, when he has trifled or shown a backwardness on his own part, equity will not aid him."

If he omits to execute his part of the contract by the time appointed for the purpose, where there is no acquiescence in the omission on the part of the defendant, the court will not interfere.

In *House* v. *Beatty*, 7 Ohio, pt. 2, p. 84, this rule was recog-

nized, the court holding that after the lapse of a reasonable time for the performance by the plaintiff, from his omission of the duty required on his part by the contract, a relinquishment by him of the contract might be presumed. See *State* v. *Baum*, 6 Ohio, 383 ; *Brown* v. *Haines*, 12 Ohio, 1; *Henry* v. *Conn*, Ib. 193; *Kirby* v. *Harrison*, 2 Ohio St. 326 ; *Campbell* v. *Hicks*, 19 Ohio St. 433.   The law as thus expounded has been the rule of all our judicial action, and is founded on the broadest equity, leaving the judge at last to adapt it as the circumstances of each case may require its application.

Nor can there be any distinction in the operation of the rule between cases where the contract is to purchase absolutely, and when a privilege or option only is secured to the lessee.   In both the principle is the same ; the vendee can not avail himself of his right unless he has been ready, willing, and able to pay the price agreed on, as he has stipulated to do, or to perform his contract whereby alone the lease is upheld.   He can not, after default in either case, apply to the chancellor for relief.   A breach of a covenant, which is a condition precedent to a claim by the covenantor against the covenantee, can not be disregarded when equity is invoked by him who is in default.   He must do equity before he can ask it.

It has been urged that as there has been no judicial determination of a forfeiture of the lease for the default of the lessee in the payment of rent and taxes, the privilege of purchase secured by the lease has not been affected. But we can not appreciate the position thus assumed, for it is obvious the proposition is legally untenable.   It is for the lessee's default, whether caused by neglect or by a positive refusal to discharge his covenants, that we may refuse to grant relief; not whether a decree has been entered, which would *ipso facto* deprive the lessee of any privilege he might otherwise have enjoyed.

On the whole case, it is apparent that the plaintiffs are not entitled to a decree.   Their father voluntarily aban-

doned the premises leased in 1858, paid no rent or taxes, and subsequent to that time, when rent was demanded, confessed his inability to pay. In the meantime the value of the property has more than doubled, and not until it had risen so rapidly in price, and after third parties had acquired title, and a very short time before the lease expired, a tender was sought to be made. If the value of the premises had fallen below the price to be paid, it is not probable any tender would have been made. The lessor alone must then have borne the loss; the lessee could not be compelled to make the purchase, as no legal objection existed upon him to do so.

To decide against the defendants would give an advantage to the plaintiffs that neither law nor equity should permit.

The prayer for specific performance is denied, and the bill dismissed with costs.